10-4401-cv

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: January 9, 2012     Decided: August 13, 2012)

Docket No. 10-4401-cv

IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION

OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, STATE TEACHERS RETIREMENT SYSTEM
OF OHIO, OHIO POLICE AND FIRE PENSION FUND,

*Plaintiffs-Appellants*,

— v. —

GENERAL REINSURANCE CORPORATION, RONALD E. FERGUSON, RICHARD NAPIER,
JOHN HOULDSWORTH,

*Defendants-Appellees*.[*]

B e f o r e:

WINTER, KATZMANN, and LYNCH, *Circuit Judges*.

Appeal from the district court's denial of plaintiffs' motion to certify a settlement

class.  The court held that the class could not satisfy the predominance requirement of

---

[*] The Clerk of Court is respectfully directed to amend the official caption as shown
above.

Federal Rule of Civil Procedure 23(b)(3) because the fraud-on-the-market presumption does not apply to the class's securities fraud claims. We hold that, under Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997), a securities fraud class's failure to satisfy the fraud-on-the-market presumption primarily threatens class certification by creating "intractable management problems" at trial. Because settlement eliminates the need for a trial, a settlement class need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement. We therefore VACATE the district court's class certification ruling, its grant of judgment on the pleadings, and its grant of partial final judgment under Federal Rule of Civil Procedure 54(b), and REMAND to the district court for further proceedings.

––––––––––

THOMAS A. DUBBS, Labaton Sucharow LLP, New York, New York (Louis Gottlieb, Labaton Sucharow LLP, New York, New York; Alan S. Kopit, Hahn Loeser & Parks LLP, Cleveland, Ohio, *on the brief*), *for Plaintiffs-Appellants*.

GEORGE M. GARVEY, Munger, Tolles & Olson LLP, Los Angeles, California (Peter L. Zimroth, Kerry A. Dziubek, Arnold & Porter LLP, New York, New York), *for Defendant-Appellee General Reinsurance Corporation*.

Frank J. Silvestri, Jr., Levett Rockwood P.C., Westport, Connecticut, *for Defendant-Appellee Richard Napier*.

Douglas Koff, Paul, Hastings, Janofsky & Walker LLP, New York, New York, *for Defendant-Appellee Ronald E. Ferguson*.

––––––––––

2

GERARD E. LYNCH, *Circuit Judge*:

In this class action case, we face a rare joint appeal from a district court's order. After the parties arrived at a settlement agreement, the district court (Deborah A. Batts, *J.*) denied plaintiffs' motion to certify a settlement class. The court held that the class could not satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) because the fraud-on-the-market presumption does not apply to the class's securities fraud claims. We hold that, under Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997), a securities fraud class's failure to satisfy the fraud-on-the-market presumption primarily threatens class certification by creating "intractable management problems" at trial. Because settlement eliminates the need for trial, a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement. We therefore vacate the district court's class certification ruling, its grant of judgment on the pleadings, and its grant of partial final judgment under Federal Rule of Civil Procedure 54(b), and remand this case to the district court.

## BACKGROUND

In October 2004, a number of securities fraud class actions were filed in the United States District Court for the Southern District of New York against American International Group, Inc. ("AIG") and various other corporate and individual defendants, including the General Reinsurance Corporation and its officers Ronald E. Ferguson, Richard Napier, and John Houldsworth (collectively, "Gen Re" or "Gen Re Defendants").

3

On February 8, 2005, the district court consolidated those actions and appointed as lead plaintiffs three Ohio public pension funds: the Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, and the Ohio Police and Fire Pension Fund (collectively, the "Lead Plaintiffs").[1]  Because the present appeal arises from the efforts of the Lead Plaintiffs and Gen Re Defendants to obtain approval for their proposed class settlement, we focus primarily on the course of the litigation between them.[2]

On December 15, 2006, Lead Plaintiffs filed the Consolidated Third Amended Class Action Complaint ("Complaint") on behalf of a putative class consisting of investors who purchased AIG's publicly traded securities between October 28, 1999, and April 1, 2005.  The Complaint alleges, in relevant part, that AIG and Gen Re violated Rule 10b-5(a) and (c), promulgated under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by entering into a sham $500 million reinsurance transaction designed to mislead the market and artificially increase AIG's share price.

In particular, the Complaint alleges that in late 2000 and early 2001 AIG and Gen Re entered into a two-part transaction that allowed AIG to book a total of $500 million in

---

[1] That order was entered by the Honorable Laura Taylor Swain, to whom the case was originally assigned.

[2] For a broader overview of the various parties to and allegations in the AIG securities litigation, see In re American International Group, Inc. Securities Litigation, 265 F.R.D. 157 (S.D.N.Y. 2010).  Earlier this year, the district court granted final approval of a $725 million class settlement resolving claims against AIG.  See In re Am. Int'l Grp., Inc. Sec. Litig., No. 04-cv-8141, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012).

premiums revenues and $500 million of claims reserves to its balance sheet in the fourth quarter of 2000 and first quarter of 2001. The terms of the transaction appeared to require AIG to make an additional $100 million of claims payments in the event that additional losses developed. According to the Complaint, however, the additional $100 million of risk was a fiction, having been added by the parties to give the appearance that risk was being transferred in the transaction. In reality, AIG was only obligated to pay a total amount of $500 million in losses, which was equal to the amount of premiums revenues that AIG was receiving from Gen Re. The Complaint alleges that the transaction was therefore not a bona fide reinsurance transaction, which would have required that AIG assume actual insurance risk, but was instead a transaction that would only look like reinsurance for AIG's accounting purposes. The Complaint further alleges that Gen Re did not treat the transaction as reinsurance in its own accounting, but knew that AIG intended to account for the transaction improperly as reinsurance. In exchange for its participation in the transaction, Gen Re received an undisclosed $5.2 million side payment.

The sham reinsurance transaction came, according to the Complaint, at a time when investors were concerned about recent reductions in AIG's loss reserves. The transaction had a significant impact on AIG's financial statements, allowing it to report added loss reserves of $106 million for the fourth quarter of 2000 and $63 million for the first quarter of 2001. As the Complaint noted, the increased reserves were highlighted in a press release issued by AIG and received favorably by investment analysts.

5

The Complaint further alleges that the true nature of the transaction remained hidden from public view until late 2004 and early 2005, when the Securities and Exchange Commission and the New York Attorney General began to investigate AIG's dealings with Gen Re.  Following a series of news reports detailing the results of the investigation,  AIG publicly acknowledged on March 30, 2005, that it had improperly treated the Gen Re transaction as reinsurance for accounting purposes.  In the wake of that announcement, as well as of the disclosure of numerous other serious accounting improprieties at AIG, the company's stock price dropped substantially.  On May 31, 2005, AIG issued a dramatic restatement of its earnings for the previous four years, reducing its reported pre-tax income for that period by more than $3.9 billion.

Just over a year after filing the Complaint, Lead Plaintiffs moved, on February 20, 2008, to certify a class for litigation of its claims against all of the defendants, including the Gen Re Defendants.  To demonstrate the element of reliance in their Section 10(b) claim, the Lead Plaintiffs invoked the fraud-on-the-market doctrine of Basic Inc. v. Levinson, 485 U.S. 224 (1988).[3]  On May 29, 2008, before the district court had ruled on

_____

[3] The elements of a Section 10(b) securities fraud claim are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011) (internal quotation marks omitted).  The fraud-on-the-market theory "involves two rebuttable presumptions that permit a finding of class-wide reliance with respect to a Rule 10b-5 claim: 'that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value.'"  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196,

the class certification motion, the Gen Re Defendants moved for judgment on the pleadings based on a then-recent Supreme Court case, Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008), which addressed the availability of the fraud-on-the-market doctrine in circumstances similar to those in the present case.

The Stoneridge plaintiffs had alleged that Charter Communications, Inc., a cable operator, arranged a transaction with two of its suppliers of digital cable set top boxes in which Charter overpaid for each set top box by $20 and the suppliers returned the overpayment by purchasing advertising from Charter at above-market rates. Id. at 154-55. According to the plaintiffs, the transaction "had no economic substance," and existed solely to "enable Charter to fool its auditor into approving a financial statement showing it met projected revenues and operating cash flow numbers." Id. at 154. The suppliers properly accounted for these transactions in their own financial statements, and were not involved in preparing Charter's fraudulent financial statements. Id. at 155. Nonetheless, the plaintiffs alleged that the suppliers were liable under Section 10(b) of the Exchange Act and Rule 10b-5 because the suppliers knew that Charter intended to use the transactions to issue misleading financial statements. Id.

---

199 n.4 (2d Cir. 2008) (quoting Hevesi v. Citigroup Inc., 366 F.3d 70, 77 (2d Cir. 2004)). The theory is "'based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business' and that '[m]isleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'" Id. (quoting Basic, 485 U.S. at 241-42).

The Supreme Court held that the <u>Stoneridge</u> plaintiffs' claim failed because the plaintiffs had not adequately alleged reliance under Section 10(b). <u>Id</u>. at 159.[4] According to the Court, the fraud-on-the-market presumption of reliance did not apply to the suppliers' conduct because "their deceptive acts were not communicated to the public" and "[n]o member of the investment public had knowledge, either actual or presumed, of [the suppliers'] deceptive acts during the relevant times." <u>Id</u>. at 159.[5] As a result, the plaintiffs could not establish their reliance upon the suppliers' actions "except in an indirect chain that we find too remote for liability." <u>Id</u>. The Court also rejected the plaintiffs' "scheme liability" argument, which suggested that the market had relied on the suppliers' actions because the suppliers' conduct was essential to Charter's ability to make its deceptive statements. <u>Id</u>. at 159-160.[6]

---

[4] As the Court noted, Section 10(b) liability does not extend to aiders and abettors. <u>Stoneridge</u>, 552 U.S. at 157 (citing <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164 (1994)). Therefore, "[t]he conduct of a secondary actor must satisfy each of the elements" of a Section 10(b) claim to expose the secondary actor to liability. <u>Id</u>. at 158.

[5] In addition, the Court noted that the presumption did not apply because suppliers "had no duty to disclose" the transaction to investors. <u>Id</u>. at 159.

[6] According to the Court, the scheme liability argument effectively suggested that "in an efficient market investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect." <u>Id</u>. at 160. The Court refused to adopt this broad concept of reliance, observing that it would cause Section 10(b) to "reach the whole marketplace in which the issuing company does business." <u>Id</u>.; <u>see also</u> <u>id</u>. at 161 ("Were [Section 10(b)] to be extended to the practices described here . . . there would be a risk that the federal power would be used to invite litigation beyond the immediate sphere of securities litigation and in areas already governed by functioning and effective state-law guarantees."). The Court also noted that the private right of action under Section 10(b) had been implied through judicial interpretation, and suggested that that fact "caution[ed] against

8

In their motion for judgment on the pleadings, the Gen Re Defendants argued that, under Stoneridge, the Lead Plaintiffs failed to state a Section 10(b) claim against Gen Re because Gen Re made no public statements about the sham reinsurance transaction. The Lead Plaintiffs opposed the motion, arguing, among other things, that their claims against Gen Re survived Stoneridge because key details about the sham transaction – including Gen Re's participation in it and the amount of loss reserves transferred – were disclosed to the market by AIG in state regulatory filings shortly after the transaction was consummated. In these circumstances, Lead Plaintiffs argued, AIG's investors can be presumed, through the fraud-on-the-market doctrine, to have relied on Gen Re's deceptive acts. Thus, the central dispute between the parties was whether Stoneridge bars a Section 10(b) claim against a counterparty to a deceptive transaction with an issuer of stock where the existence of the transaction and the counterparty's participation in it is disclosed to the market by the issuer, but not by the counterparty.

The district court did not immediately rule on this question. On September 23, 2008, Gen Re filed its opposition to Lead Plaintiffs' motion for class certification. At around the same time, in light of the "uncertainty with respect to how the District Court, and this Court, would rule on the Stoneridge issue," Gen Re and the Lead Plaintiffs entered into settlement discussions. Joint Brief of Appellants and Appellees ("Joint Br.") at 5.

_____

its expansion." Id. at 165. Accordingly, the plaintiffs' allegations failed to satisfy the element of reliance, and their Section 10(b) claim failed. Id. at 167.

On November 3, 2008, the parties jointly requested that the district court hold Gen Re's motion for judgment on the pleadings in abeyance so that they could participate in mediation. The court stayed decision of the motion until February 6, 2009.[7] On February 4, 2009, Lead Plaintiffs and Gen Re (collectively, "the Settling Parties") reported to the district court that they had reached an agreement in principle on terms for a settlement. At their request, the district court granted a further stay until March 20, 2009. Thereafter, the Settling Parties agreed upon terms for a $72 million settlement, and on February 25, 2009, they submitted to the district court a signed settlement agreement and an accompanying motion for preliminary settlement approval. The district court subsequently granted several additional stays during 2009, the last of which suspended the Gen Re proceedings indefinitely.

While the Gen Re litigation was stayed, the district court heard several days of evidence and argument on Lead Plaintiffs' pending motion for class certification. In light of the settlement, the Gen Re Defendants did not participate in those proceedings. On February 22, 2010, the district court issued a lengthy class certification decision, which, in relevant part, denied Lead Plaintiffs' class certification motion with respect to the claims against Gen Re. See In re Am. Int'l Grp., Inc. Sec. Litig., 265 F.R.D. 157 (S.D.N.Y. 2010). The court invoked our decision in In re Salomon Analyst Metromedia

---

[7] The stay was granted by the Honorable John E. Sprizzo, to whom the case had been reassigned. Judge Sprizzo died in December 2008, and the consolidated actions were reassigned to Judge Batts.

10

Litigation, which recognized that, under Stoneridge, a Section 10(b) plaintiff must demonstrate that a defendant's "conduct 'satisf[ies] each of the elements or preconditions for liability'" and that the fraud-on-the-market presumption does not apply to a defendant whose "'deceptive acts were not communicated to the public.'" 544 F.3d 474, 481 (2d Cir. 2008) (quoting Stoneridge, 552 U.S. at 158, 159). The district court then held:

> Because Lead Plaintiffs have not established or even pled that the Gen Re Defendants made any public misstatement or omission with regard to AIG, the fraud-on-the-market presumption does not apply to claims against these Defendants, and individual issues of reliance predominate over common issues for the claims against the Gen Re Defendants regarding AIG stock. Accordingly, the Court does not certify the class of claims against the Gen Re Defendants.

Id. at 175. On March 4, 2010, the court issued a one-sentence order denying Lead Plaintiffs' motion for preliminary approval of the settlement "as moot" in light of its class certification ruling.

Thereafter, the Settling Parties continued to seek approval of the Gen Re settlement. On June 23, 2010, they jointly moved for preliminary approval of the settlement, arguing that even if certification of a litigation class was inappropriate, the court could – and should – nonetheless certify a settlement class. Relying on the Supreme Court's decision in Amchem, 521 U.S. at 619-20, the Settling Parties argued that the individual reliance issues that led the court to deny class certification would not pose a problem of trial manageability because the very existence of the settlement eliminated the need for a trial.

11

On September 10, 2010, the court issued an order ("Dismissal Order") denying the preliminary approval motion and granting Gen Re's long-dormant motion for judgment on the pleadings. On the class certification question, the court rejected the Settling Parties' "attempts to distinguish between settlement and litigation classes based upon the issue of manageability at trial." Dismissal Order at 3. According to the court, the parties' trial manageability argument was beside the point, because the Lead Plaintiffs' claim against Gen Re still "fail[ed] to meet the predominance requirement" of Federal Rule of Civil Procedure 23(b)(3). Id. As support for this conclusion, the court again invoked our decision in In re Salomon, noting its "teaching that 'a successful rebuttal' of proof of the elements of the fraud-on-the-market presumption 'defeats certification by defeating the Rule 23(b)(3) predominance requirement.'" Id. (quoting In re Salomon, 544 F.3d at 485). The court found that neither we nor the Supreme Court have "state[d] that a court may dispense with the requirement of proving the application of the fraud-on-the-market presumption when certifying a class for settlement purposes." Dismissal Order at 3-4 (citing Basic, 485 U.S. 224; In re Salomon, 544 F.3d 474; In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24 (2d Cir. 2006) ("In re IPO")). Then, turning to Gen Re's motion for judgment on the pleadings, the district court again held that Stoneridge barred Lead Plaintiffs' Section 10(b) claim because "none of the Gen Re Defendants made any public statement or took any action regarding AIG stock" that could be relied upon. Id. at 5-6. The court therefore dismissed the claim against Gen Re, and entered a partial final judgment in favor of Gen Re pursuant to Federal Rule of Civil Procedure 54(b).

12

Lead Plaintiffs filed a timely notice of appeal. The Settling Parties then jointly moved to bifurcate this appeal, so that the issue of the propriety of certifying a settlement class (about which the Settling Parties agree) could be addressed before the merits issues (about which they disagree). We granted the motion, and the Settling Parties filed a joint brief that argues that the district court erred by declining to certify a settlement class.

## DISCUSSION

I.      Standard of Review

We review both a district court's ultimate decision on class certification and its rulings as to individual Rule 23 requirements for abuse of discretion. In re IPO, 471 F.3d at 32; Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). When reviewing a denial of class certification, we accord a district court noticeably less deference than when we review a grant of class certification. In re Salomon, 544 F.3d at 480. To the extent a district court's ruling on an individual Rule 23 requirement involves an issue of law, our review is de novo. Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010).

II.     Class Certification Requirements

"Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). The party seeking "class certification must affirmatively demonstrate . . . compliance with the Rule," and a district court may only certify a class if it "'is satisfied, after a rigorous analysis,'" that the requirements of Rule 23 are met. Id. (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)); see also In re IPO, 471 F.3d at 41 (holding that a district court must make a

13

"definitive assessment of Rule 23 requirements" and "resolve[] factual disputes relevant to each Rule 23 requirement"); Myers, 624 F.3d at 547 ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met.").  As the Supreme Court has recently noted, "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."  Wal-Mart Stores, 131 S. Ct. at 2551; see also In re IPO, 471 F.3d at 41 (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied. See In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir. 2010).  Thus, the court must assess whether the proposed class satisfies Rule 23(a)'s four threshold requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Fed. R. Civ. P. 23(a).  The district court must also determine whether the action can be maintained under Rule 23(b)(1), (2), or (3).  In this case, the Lead Plaintiffs seek to certify a class under Rule 23(b)(3), which permits certification where "the court finds that the questions of law or fact common to

14

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." If the class satisfies the requirements of Rules 23(a) and (b), then the district court must separately evaluate whether the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e).

In its landmark decision in <u>Amchem</u>, the Supreme Court addressed whether a class of both current and future asbestos claimants could be certified for the purpose of entering into a global settlement of virtually all asbestos claims. 521 U.S. at 597, 602. The Court noted that the settlement class consisted of "[u]ntold numbers of individuals," including both plaintiffs who currently manifested asbestos-related injuries and those who had only been exposed to asbestos-containing products. <u>Id</u>. at 602-03. The Court held that this "sprawling" class failed both Rule 23(b)(3)'s predominance requirement and Rule 23(a)(4)'s adequacy of representation requirement, and accordingly refused to permit the certification of the class. <u>Id</u>. at 622-28.

In the course of its opinion, the Court recognized that "the 'settlement only' class has become a stock device" in modern class action litigation, and noted that it had "granted review to decide the role settlement may play, under existing Rule 23, in determining the propriety of class certification." <u>Id</u>. at 618, 619. The Court squarely held that "[s]ettlement is relevant to a class certification." <u>Id</u>. at 619. According to the Court, a district court "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management

15

problems, for the proposal is that there be no trial." Id. at 620 (citing Fed R. Civ. P. 23(b)(3)(D)).  At the same time, however, the Court stressed that in the settlement context "other specifications of [Rule 23] – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." Id.  As Judge Scirica has explained:

> [S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context.  A key question in a litigation class action is manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof.  But the settlement class presents no management problems because the case will not be tried. Conversely, other inquiries assume heightened importance and heightened scrutiny because of the danger of conflicts of interest, collusion, and unfair allocation.

Sullivan v. DB Invs., Inc., 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J., concurring) (citing Amchem, 521 U.S. at 620); see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 795 (3d Cir. 1995) (identifying "collusion, inadequate prosecution, and attorney inexperience [as] the paramount concerns in pre-certification settlements").  Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of "focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." Amchem, 521 U.S. at 621.[8]

---

[8] Accordingly, the Amchem Court cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement." Id.; see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 858 (1999) ("Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential

16

As noted above, the Lead Plaintiffs seek to certify a Rule 23(b)(3) class, and

therefore must show that common questions of law or fact "predominate" over purely

individual questions and that a class action is "superior" to other methods of resolving the

dispute. Fed. R. Civ. P. 23(b)(3). As Amchem observed, Rule 23(b)(3) was developed

"for situations in which class-action treatment is not as clearly called for as it is in Rule

23(b)(1) and (b)(2), [but] may nevertheless be convenient and desirable." 521 U.S. at 615

(internal quotation marks omitted). Rule 23(b)(3) specifies that the "matters pertinent" to

the predominance and superiority findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at

623. The requirement's purpose is to "ensure[] that the class will be certified only when

it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of

decision as to persons similarly situated, without sacrificing procedural fairness or

---

inequity at the precertification stage, quite independently of the required determination at postcertification fairness review under subdivision (e) that any settlement is fair in an overriding sense.").

bringing about other undesirable results.'" Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (quoting Amchem, 521 U.S. at 615). While predominance may be difficult to demonstrate in mass tort cases, such as Amchem, in which the "individual stakes are high and disparities among class members great," it is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Amchem, 521 U.S. at 625.

When evaluating litigation classes, we have held that the predominance "requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Myers, 624 F.3d at 547 (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)); see also In re Salomon, 544 F.3d at 480 ("To meet the [predominance] requirement, a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." (internal quotation marks omitted)); In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.").

In the context of a settlement class, concerns about whether individual issues would create "intractable management problems" at trial drop out of the predominance analysis because "the proposal is that there be no trial." Amchem, 521 U.S. at 620. However, the certifying court must still determine whether the "the legal or factual

18

questions that qualify each class member's case as a genuine controversy" are sufficiently similar as to yield a cohesive class. Id. at 623; see also Sullivan, 667 F.3d at 338 (Scirica, J., concurring) ("Issues of predominance and fairness do not undermine this settlement. All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage. . . . All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion."). The focus of this analysis is on "questions that preexist any settlement," and not on whether all class members have "a common interest in a fair compromise" of their claims. Amchem, 521 U.S. at 623.

While the predominance inquiry will sometimes be easier to satisfy in the settlement context, other requirements of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions," such as the Rule 23(a)(4) requirement of adequate representation, will "demand undiluted, even heightened, attention." Id. at 620; see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 308 (3d Cir. 1998) (suggesting that "the key to Amchem appears to be the careful inquiry into adequacy of representation"); In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 250-55 (2d Cir. 2011) (vacating certification of settlement class of copyright owners because of conflicts between different categories of class members).

III.    Certification of the Gen Re Settlement Class

The district court held that it could not certify a settlement class because Stoneridge barred plaintiffs from invoking the fraud-on-the-market presumption against Gen Re. The Settling Parties note that the proposed class in this securities case is far more cohesive than the sprawling asbestos class in Amchem, and argue that the district court erred by denying their joint motion for preliminary approval of the Gen Re settlement because, "[w]hether or not a class could properly have been certified . . . for purposes of *litigation*, such a class could have been – and should have been – certified conditionally for *settlement* purposes." Joint Br. at 10, 23.

Even assuming that the district court correctly applied Stoneridge – an issue we do not reach[9] – the court erred in holding that a Section 10(b) settlement class must satisfy the fraud-on-the-market presumption in order to demonstrate predominance. In the context of a litigation class, the fraud-on-the-market presumption spares the plaintiff class from the extremely laborious – and often impossible – task of proving at trial that each individual plaintiff was aware of and specifically relied upon the defendant's false

_____

[9] Thus, we do not consider whether the Lead Plaintiffs' arguments are consistent with Pacific Investment Management Co. LLC v. Mayer Brown LLP, 603 F.3d 144 (2d Cir. 2010), a decision construing and applying Stoneridge that we issued after the parties in this case agreed to the settlement. We note, however, that Lead Plaintiffs' arguments seeking to distinguish Stoneridge do not strike us as frivolous, and apparently did not appear so to the Gen Re Defendants, who were willing, after Stoneridge was decided, to agree to a settlement worth $72 million. It is also, of course, not unheard of for federal courts of appeals or for the Supreme Court to reverse seemingly-controlling prior decisions, and parties may well decide to settle to the avoid the risk of such changes in the law.

20

statement.  See Basic, 485 U.S. at 245 (noting that presumptions such as the fraud-on-the-market presumption "serve to assist courts in managing circumstances in which direct proof . . . is rendered difficult"); Hevesi, 366 F.3d at 78 ("To the extent that members of a plaintiff class of securities purchasers can invoke the Basic presumption by alleging fraud on the market, they need not prove individual reliance on alleged misrepresentations by an issuer.  By contrast, if plaintiffs are not entitled to the Basic presumption because they cannot plead fraud on the market, reliance must be proved separately as to each class member . . .").

Therefore, a litigation class's failure to qualify for Basic presumption typically renders trial unmanageable, precluding a finding that common issues predominate.  See Basic, 485 U.S. at 242 ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones.").  By contrast, with a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear.  See Amchem, 521 U.S. at 620.

The district court suggested that our decision in In re Salomon, which involved a litigation class, bars class certification in Section 10(b) actions when the fraud-on-the-market presumption does not apply.  In In re Salomon, we recognized that "a district court [must] make a 'definitive assessment' that the Rule 23(b)(3) predominance requirement has been met."  544 F.3d at 485 (quoting In re IPO, 471 F.3d at 41).  We further stated that in a Section 10(b) case "[t]his assessment cannot be made without determining

21

whether defendants can successfully rebut the fraud-on-the-market presumption," and

noted that, under Basic, "a successful rebuttal" of the fraud-on-the-market presumption

"defeat[s] the Rule 23(b)(3) predominance requirement." Id. (emphasis omitted) (citing

Basic, 485 U.S. 249 n.29). Accordingly, we held that a district court "must permit

defendants to present their rebuttal arguments before certifying a class." Id. (internal

quotation marks and ellipsis omitted).[10]

As noted, however, In re Salomon involved a litigation class, not a settlement

class, see 544 F.3d at 479-80, and nowhere in that decision did we suggest that a Section

10(b) settlement class cannot be certified unless the fraud-on-the-market presumption

applies to plaintiffs' claims. Indeed, our emphasis in In re Salomon was on permitting

defendants the opportunity to "successfully rebut" the presumption prior to certifying the

class. Id. at 485. In the context of a litigation class, postponing analysis of the

---

[10] We note that the Supreme Court has recently granted certiorari in Amgen Inc. v. Connnecticut Retirement Plans and Trust Funds, No. 11-1085, 2012 WL 692881 (June 11, 2012). The two questions presented by the petition for certiorari seek resolution of a split among the circuits regarding whether (1) in Section 10(b) misrepresentation cases district courts must require proof of materiality before certifying a plaintiff class based on the fraud-on-the-market theory, and (2) whether, in such cases, district courts must permit defendants to present evidence rebutting the applicability of the fraud-on-the-market theory before certifying a plaintiff class based upon that theory. See Petition for a Writ of Certiorari, Amgen Inc. v. Connnecticut Retirement Plans and Trust Funds, No. 11-1085, 2012 WL 707042, *i (March 1, 2012); see also id. at *8-13 (discussing circuit split on these questions, and noting that our decision in In re Salomon requires that, at the class certification stage, plaintiffs present proof of a material misrepresentation and defendants have an opportunity to rebut the fraud-on-the-market presumption). The two questions in Amgen arise from Section 10(b) cases addressing the certification standards for litigation classes, not settlement classes, and are thus not at issue in this appeal.

22

defendant's rebuttal arguments until after certification is inappropriate because the rebuttal could demonstrate that individual reliance issues would render a trial unmanageable, thereby defeating the predominance requirement. However, as noted above, those manageability concerns do not stand in the way of certifying a settlement class.

The district court also appears to have viewed manageability and predominance as two independent inquiries under Rule 23(b)(3). See Dismissal Order at 3-4. However, the plain text of Rule 23(b)(3) states that one of the "matters pertinent" to a finding of predominance is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D); see also Amchem, 521 U.S. at 615 (noting that manageability is one of the four considerations in the "nonexhaustive list of factors pertinent to a court's close look at the predominance and superiority criteria" (internal quotation marks omitted)); In re IPO, 226 F.R.D. 186, 195 n.51 (S.D.N.Y. 2005) ("[A]lthough litigants frequently conceive of 'predominance' and 'manageability' as separate requirements of Rule 23(b)(3), they are not."). Thus, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis. See in re IPO, 226 F.R.D. at 195 n.51 (noting that "[i]n this case, the removal of [the manageability] factor from consideration alleviates the predominance defect").

We now clarify that a Section 10(b) settlement class's failure to satisfy the fraud-on-the-market presumption does not necessarily preclude a finding of predominance. Where a Section 10(b) settlement class would otherwise satisfy the predominance

23

requirement, the fact that the plaintiff class is unable to invoke the presumption, without more, is no obstacle to certification. Because the only obstacle to a finding of predominance identified by the district court was its conclusion that Stoneridge barred the plaintiff class from invoking the fraud-on-the-market presumption, we will vacate its class certification ruling. We leave it to the district court on remand to determine, consistent with this opinion, whether class certification under Rule 23 is warranted, or whether there are other obstacles to class certification that have not yet been identified in the record.

On remand, the district court should pay particular attention to Amchem's guidance that in the settlement context Rule 23's requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention." 521 U.S. at 620. On the record before us, it is not clear, for example, whether any members of the class may have viable state law claims that would be released by the settlement, and whether variations in state law might cause class members' interests to diverge. Cf. Sullivan, 667 F.3d at 302-03 (analyzing arguments by objectors that "state law variations undermine a finding of predominance"). Because the Gen Re class has not previously been certified, the district court has not yet had the opportunity to hear from potential objectors, who might be able to raise these or other concerns as appropriate. See Fed. R. Civ. P. 23(c)(2)(B) & (e)(5) (requiring that members of a Rule 23(b)(3) class receive notice upon the class's certification and permitting any class member to object to a proposed class settlement); see also In re

24

Literary Works, 654 F.3d at 249-50 (analyzing objectors' arguments that a settlement violated Rule 23(a)(4)'s adequacy of representation requirement because of conflicts of interests between those class members with lucrative claims and those with lower-value claims).

In addition, we note that there may be circumstances in which it will be appropriate for a district court to determine, in its analysis of class certification, whether the fraud-on-the-market presumption applies to the claims of a settlement class. For example, if there appear to be conflicts within the class, with some members who could satisfy the presumption and others who cannot, a district court may need to address the applicability of the presumption in order to make findings with respect to adequacy of representation or predominance, or to evaluate whether subclasses are necessary. See Fed. R. Civ. P. 23(c)(5) (permitting the division of a class into subclasses); see also In re Literary Works, 654 F.3d at 251-55 (discussing circumstances under which the creation of subclasses may be necessary to remedy fundamental conflicts of interest within a class). The district court in this case did not suggest that such conflicts exist in the proposed class, and we are aware of none. Nonetheless, should such conflicts – or other questions regarding the scope of the proposed class – be brought to the court's attention, it may address the fraud-on-the-market presumption as necessary.

Because we vacate the district court's class certification ruling, we will also vacate its order granting judgment on the pleadings to Gen Re and its grant of partial final judgment to Gen Re under Federal Rule of Civil Procedure 54(b). Defendants in class

action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e). See Sullivan, 667 F.3d at 310 ("[W]ere we to mandate that a class include only those alleging 'colorable' claims, we would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not. We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").

Finally, we emphasize that our order vacating the district court's class certification order should not be taken as an endorsement of the fairness of the proposed settlement – an issue we leave to the district court to address in the first instance in the event that it determines that class certification is appropriate.

## CONCLUSION

For the reasons stated above, we VACATE the district court's (1) class certification order with respect to the Gen Re class; (2) its order granting Gen Re judgment on the pleadings; and (3) its grant of partial final judgment to Gen Re under Rule 54(b). We further REMAND this case to the district court with instructions that it conduct further proceedings not inconsistent with this opinion.